```
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RODNEY L. GARROTT,<br><br>        Petitioner,<br><br> v.<br><br>PAT GLEBE,<br><br>        Respondent. | No. C13-887 BHS/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for: October 11, 2013** |

Petitioner Rodney L. Garrett is in prison under a conviction for residential burglary. In his 28 U.S.C. § 2254 petition, he challenges two prison disciplinary proceedings on due process grounds. In Claim 1, he challenges a February 2011 infraction, and in Claim 2, he challenges an April 2011 infraction. ECF No. 6. Respondent filed an answer and submitted the relevant state court record. ECF Nos. 14 and 15, respectively. Respondent contends that Claim 1 is time-barred and that as to Claim 2, the sanction received by Mr. Garrott did not implicate a liberty interest. ECF No. 15. Mr. Garrott filed a reply. ECF No. 16. Having carefully considered the parties' filings and relevant record, the undersigned recommends that the petition be denied and this action dismissed with prejudice.

**BACKGROUND**

Mr. Garrott is in the Washington Department of Corrections' custody pursuant to a conviction by jury verdict for residential burglary, committed on March 7, 2005. ECF No. 15, Exhibit 1. Mr. Garrott was sentenced on April 7, 2006 to 84 months of confinement. *Id*. at 4.

REPORT AND RECOMMENDATION - 1

His early release date is in 2016.  *Id.*, Exhibit 2, OMNI Legal Face Sheet, at 1 ("ERD: 08/18/2016").

A.   **February 2011 Infraction**

The Washington Supreme Court summarized the facts relating to the February 2011 infraction as follows:

> Inmate Rodney Garrott was found guilty of violating prison regulations prohibiting disruptive behavior, refusing a direct order to proceed to or disperse from a particular area, and using physical force, intimidation, or coercion against any person. The Department of Corrections sanctioned Mr. Garrott with 30 days of cell confinement but did not penalize him the loss of good conduct time.

ECF No. 15, Exhibit 3.

Pro se, Mr. Garrott filed a personal restraint petition with the Washington Court of Appeals challenging the February 2011 infraction.  ECF No. 15, Exhibit 5.  The court dismissed his petition.  *Id.*, Exhibit 6.  Mr. Garrott moved for discretionary review in the Washington Supreme Court.  *Id.,* Exhibit 7.  The court denied review in a ruling by the commissioner on September 23, 2011.  *Id.,* Exhibit 3.  The Washington Court of Appeals issued a certificate of finality on December 30, 2011.  *Id.,* Exhibit 8.

B.   **April 2011 Infraction**

The Washington Supreme Court summarized the facts relating to the April 2011 infraction as follows:

> The disciplinary sanctions were imposed when Mr. Garrott was incarcerated at the Airway Heights Correction Center.  On March 14, 2011, a hearing officer found Mr. Garrott guilty of violating WAC 137-28-260 (658) by not timely turning in his identification badge. The officer imposed 10 days of cell confinement for that infraction.

REPORT AND RECOMMENDATION - 2

On April 29, 2011, a hearing officer found Mr. Garrott guilty of WAC 137-28-260 (505) (fighting with another person) and 137-28-260 (717) (causing a threat of injury to another person by disregarding orders). The officer imposed 16 days of segregation and 30 days of cell confinement. Mr. Garrott claims the Department of Corrections subsequently demoted his custody status. He is now confined at the Washington State Penitentiary at Walla Walla.

ECF No. 15, Exhibit 4, Ruling Denying Review, at 1-2.

Pro se, Garrott filed a personal restraint petition with the Washington Court of Appeals challenging the April 2011 infraction. ECF No. 15, Exhibit 9. The court dismissed his petition. *Id.,* Exhibit 12. Mr. Garrott moved for discretionary review in the Washington Supreme Court. *Id.*, Exhibit 13. The court denied review in a ruling by the commissioner on June 25, 2012. *Id.,* Exhibit 4. The Washington Court of Appeals issued a certificate of finality on April 5, 2013. *Id.,* Exhibit 16.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1939-41 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 127 S. Ct. at 1940. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, ---U.S.---, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 127 S.Ct. at 1940. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011).

REPORT AND RECOMMENDATION - 3

The Court finds it unnecessary to hold an evidentiary hearing because Mr. Garrott's claims may be resolved on the existing state court record.

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." § 2254(e)(1). In addition, review of state court decisions under § 2254(d)(1) is "limited to the

REPORT AND RECOMMENDATION - 4

record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

## DISCUSSION

### A.     Claim 1 – February 2011 Infraction

In Claim 1, Mr. Garrott contends that he was denied due process "through concealment of retaliatory action." ECF No. 6, at 5, 15-16. He states that on February 9, 2011, he was confronted by a corrections officer for walking laps in the gym and after he asked for the officer's name so that he could grieve the issue, the officer retaliated by infracting him on false charges of using physical force, intimidation or coercion, refusing a direct order, and disruptive behavior. *Id.*, at 15. Respondent contends that this claim is not timely. ECF No. 14, at 6-9.

Under AEDPA, habeas corpus petitions by persons imprisoned under a state court judgment are subject to a one-year statute of limitations, and this is applicable not only to petitions challenging a state court judgment, but also petitions challenging decisions from prison administrative proceedings. *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004). In challenges to administrative decisions, under 28 U.S.C. § 2244(d)(1)(D), "[t]he limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Additionally, "[t]he time during which a *properly filed application* for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

Where a habeas petitioner sought direct review by the highest state court but did not file a petition for a writ of certiorari in the United States Supreme Court, the AEDPA one-year limitations period for seeking federal habeas review begins to run not on the date the highest

REPORT AND RECOMMENDATION - 5

state court entered judgment, but on the date the time for seeking certiorari expires. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). The time period for seeking certiorari is ninety days, according to the Supreme Court Rule 13. *Id.*

In Mr. Garrott's case, the February 2011 infraction became final for purposes of *federal* law on September 23, 2011, the date the Washington Supreme Court denied review of Mr. Garrott's personal restraint petition. ECF No. 15, Exhibit 3. *White v. Klitzkie*, 281 F.3d 920, 923 n.4 (9th Cir. 2002) (citing *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001)) (holding that under Guam's court procedural rules, it was decision of Supreme Court of Guam, and not ministerial act of entry of mandate, that ended statutory tolling under 28 U.S.C. § 2244(d)(1)).

The time for seeking certiorari with the United States Supreme Court began to run the next day and expired 90 days later on December 22, 2011. The 28 U.S.C. § 2244(d)(1) one-year statute of limitations began to run the next day. *Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002); *see also Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). The statute then ran for 365 days and expired on December 22, 2012.

Almost five months later, Mr. Garrott constructively filed his federal habeas corpus petition on May 13, 2013, although the petition was not date stamped in this Court until May 30, 2013. ECF No. 6. *See Patterson v. Stewart,* 251 F.3d 1243, 1245 n.2 (9th Cir. 2001) (under prison "mailbox rule," petition is deemed "filed" for purposes of AEDPA's statute of limitations the moment it is delivered to prison authorities for forwarding to clerk of district court). Therefore, Claim 1 is untimely under the federal statute of limitations, 28 U.S.C. § 2244(d).

The AEDPA statute of limitations is subject to equitable tolling where the petitioner pursued his rights diligently and "some extraordinary circumstance stood in his way." *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549 (2010). Equitable tolling is appropriate where external

REPORT AND RECOMMENDATION - 6

forces, rather than the petitioner's lack of diligence, account for the failure to file a timely petition. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Whether a petitioner is entitled to equitable tolling is a fact-specific inquiry. *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). To receive equitable tolling, a petitioner at the very least must show the extraordinary circumstances "were the but-for and proximate cause of his untimeliness." *Allen v. Lewis*, 255 F.3d 798, 800 (9th Cir. 2001), *vacated on other grounds on rehearing en banc*, 295 F.3d 1046 (2002) (loss of legal materials during 27 day period did not warrant equitable tolling where petitioner did not show the loss prevented filing a petition during the remaining limitations period); *Miles v. Prunty*, 187 F.3d at 1105-07 (equitable tolling appropriate where prison official failed to properly process for mailing a timely submitted petition); *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001) (equitable tolling not appropriate where attorney miscalculated the statute of limitations deadline).

Mr. Garrott has not demonstrated that any extraordinary circumstance prevented him from timely filing a federal habeas petition and he does not explain why he waited almost a year and eight months to file his habeas petition after the state court denied his personal restraint petition with regard to the February 2011 infraction. Based on the foregoing, the undersigned finds that Claim 1 is not timely and should, therefore be dismissed.

**B.    Claim 2 – April 2011 Infraction**

The incident underlying Claim 2 occurred on April 12, 2011 in the Airway Heights Correction Center (AHCC) law library where Mr. Garrott states that he was threatened and assaulted by another inmate. After Mr. Garrott was x-rayed and treated at AHCC's infirmary, Corrections Officer Foland gave him a serious infraction report in which she stated that she had witnessed Mr. Garrott punch the other inmate and refuse to stop fighting. Mr. Garrott contends

REPORT AND RECOMMENDATION - 7

that Officer Foland's infraction and report were "fabricated to conceal fact that she and her partner were not at their duty station … to observe assaultive action against me." ECF No. 6, at 18. He claims further that Officer Foland's partner and the law librarian failed to correct or provide statements to correct Officer Foland's fabricated infraction report. *Id.*

Mr. Garrott claims that his due process rights were violated when Officer Foland's false evidence was considered at his infraction hearing. Mr. Garrott was found guilty of the infraction and sanctioned with 16 days of segregation and a loss of his ability to earn 10 days of "earned time." ECF No. 6, at 19; ECF No. 15, Exhibit 4, at 3.

The Washington Supreme Court rejected Mr. Garrott's claims:

> Mr. Garrott claims he was not given proper notice of the March 14 hearing, and that neither disciplinary decision was supported by sufficient evidence[1]. But there is no evidence that the department sanctioned Mr. Garrott with a loss of earned release time as a result of the above-described disciplinary decisions. Segregation from the general inmate population is not a deprivation of liberty within the meaning of the due process clause. *Sandin v. Connor*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). And inmates have no liberty interest in their custody status protected by the due process clause. *In re Pers. Restraint of Dowell*, 100 Wn.2d 770, 772-73, 674 P.2d 666 (1984); *In re Pers. Restraint of Galvez*, 79 Wn. App, 655, 657, 904 P.2d 790 (1995). Mr. Garrott thus has no liberty interest in remaining in the general prison population. *Galvez*, 79 Wn. App. at 657.
>
> To the extent due process concerns apply to prison disciplinary actions, review is limited to determining whether the action was so arbitrary and capricious as to deny the petitioner a fundamentally fair hearing. *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 215, 227 P.3d 285 (2010); *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984). To be fundamentally fair, a prison disciplinary proceeding must afford the prisoner notice of the violation, an opportunity to present evidence and call witnesses when not unduly hazardous to prison safety and correctional goals, and a written statement of the evidence relied upon and the reasons supporting the discipline. *Grantham*, 168 Wn.2d at 215-16; *In re Pers. Restraint of Gronquist*, 138 Wn.2d

---

[1] In addition to the April 29, 2011 hearing at issue herein, Mr. Garrott raised issues relating to an unrelated March 14, 2011 hearing (failure to timely turn in his identification badge) in his personal restraint petition.

REPORT AND RECOMMENDATION - 8

> 388, 396-97, 978 P.2d 1083 (1999). And some evidence must support the action. *Grantham*, 168 Wn.2d at 216; *Reismiller*, 101 Wn.2d at 295.
>
> The two disciplinary proceedings here comported with minimal due process requirements. Mr. Garrott was given, and he acknowledged by signature, written notice of the March 14 hearing, which advised him to watch for cell call-out. But Mr. Garrott did not appear for the disciplinary hearing. Mr. Garrott claims he was not called out from his cell, but he provides no evidence to support that assertion[2]. It is apparent that Mr. Garrott simply ignored the call-out. The sanctions were also supported by some evidence in the form of correctional staff incident reports. Mr. Garrott disputes that evidence, but this court will not review the hearing officer's credibility determinations.
>
> Mr. Garrott claims he is being disciplined in retaliation for engaging in prison litigation. But he does not provide sufficient evidence to support that assertion. *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). He may have lost 10 days earned time for failing to program or work, but he does not show that that loss of time is tied to the disciplinary actions challenged here. In sum, Mr. Garrott fails to identify a reviewable issue.

ECF No. 15, Exhibit 4, at 2-3.

In addition to the April infraction at issue herein, Mr. Garrott raised in his personal restraint petition before the Washington Supreme Court, issues relating to a March 14, 2011 hearing (failure to timely turn in his identification badge) that is not at issue herein. As to the April infraction, Mr. Garrott acknowledged in his personal restraint petition that he received notice of his infraction, provided witnesses and supplement evidence, and attended the April 29, 2011 hearing. ECF No. 15, Exh. 9.

Respondent contends that there is no procedural due process violation in Mr. Garrott's case because disciplinary segregation does not create a liberty interest and Washington state statutes governing earned time also do not create a liberty interest. The standard analysis under the Due Process Clause consists of two steps: the Court first asks whether a liberty or property

---

[2] Mr. Garrott acknowledged in his personal restraint petition that he received notice of his infraction, provided witnesses and supplement evidence, and attended the April 29, 2011 hearing. ECF No. 15, Exh. 9.

REPORT AND RECOMMENDATION - 9

interest of which a person has been deprived exists, and if so the Court asks whether the procedures that the state followed were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. ___, 131 S. Ct. 859, 861 (2011).

Mr. Garrott's disciplinary segregation for 16 days does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). An inmate subject to disciplinary segregation is not entitled under the Due Process Clause to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Sandin*, at 487. Mr. Garrott's segregation that resulted from his infraction hearing "was within the range of confinement to be normally expected for one serving" a term of 84 months. *Id*. (finding no liberty interest in a 30-day period of disciplinary segregation).

In addition, Mr. Garrott does not have a constitutionally guaranteed liberty interest in behavioral credits earned as a result of satisfactory behavior while in prison. *Wolff*, at 557; *Carlo v. City of Chino*, 105 F.3d 493, 497 (9th Cir.1997). A state, however, may create a liberty interest in behavioral credits through state statutes or prison regulations. *Superintendent v. Hill*, 472 U.S. 445, 453 (1985). State-created liberty interests are generally limited to protecting "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Washington's early release time statutes, Revised Code of Washington (RCW) §§ 72.09.130 and 9.94A.729, do not create a constitutionally-protected liberty interest in earning earned time credits. *In re Galvez*, 79 Wn. App. 655, 657-58, 904 P.2d 790 (1995). Therefore, Mr. Garrott was not entitled to the protections of due process before he was deprived of his ability to earn the credits during his time in cell confinement. *Id*.; *Wolff*, 418 U.S. at 557; *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1094-95 (9th Cir.1986), *abrogated in part on other*

REPORT AND RECOMMENDATION - 10

*grounds by Sandin,* 515 U.S. 472 (holding that California Penal Code § 2933 does not create constitutionally protected liberty interest in worktime credits); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause is not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss").

Pursuant to Washington's Sentencing Reform Act (SRA), inmates can earn an early release date through an earned early release program comprised of two types of credits: "earned time" and "good conduct time." WAC § 137-30-020. "Earned time," which is at issue here, is defined as "that portion of time an offender is eligible to earn for program participation approved by the classification process and consistent with his/her case management plan." WAC § 137-30-020; *see also* DOC Policy No. 350.1002 (available at http://www.doc.wa.gov/policies/), which provides that inmates "who participate in approved programs, including work and school, are eligible for earned time for each calendar month". Thus, inmates who participate in programming are entitled to earned time, which can constitute 5 days for every calendar month of time served for offenders eligible to earn early release credits generally at the overall rate of 33 percent. *See* DOC Policy No. 350.100, at 4-5.

These provisions were developed in response to RCW 72.09.130 and RCW 9.94A.729. RCW 72.09.130 provides that the DOC "shall adopt" a system providing incentives for good behavior and participation in available education and work programs. Pursuant to RCW 72.09.130, the early release time credit program "shall be fair, measurable, and understandable to offenders, staff, and the public." RCW 9.94A.729(1) provides in part:

> The term of the sentence of an offender committed to a correctional facility operated by the department may be reduced by earned release time in accordance with procedures that shall be developed and adopted by the correctional agency having jurisdiction in which the offender is confined. The earned release time

REPORT AND RECOMMENDATION - 11

shall be for good behavior and good performance, as determined by the correctional agency having jurisdiction.

RCW 9.94A.729(1)(a). This statute gives the state's correctional facilities "plenary authority over good-time awards for offenders under their jurisdiction." *In re Williams*, 121 Wn.2d 655, 661, 853 P.2d 444 (1993).

In *Galvez*, the Washington Court of Appeals found that the inmate's placement in disciplinary segregation, which resulted in his being unable to participate in programming and to thus receive earned time, did not implicate a liberty interest. The court reasoned that the language in the state's early release statutes was "permissive and not mandatory upon the Department."[3] *Galvez*, 79 Wn. App. at 658 (quoting *In re Dowell*, 100 Wn.2d 770, 774, 674 P.2d 666 (Wash. 1984)).  The opinion in *Galvez* provides a definitive interpretation of Washington state law that is binding on federal courts. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

To the extent Mr. Garrott is asserting that his infraction was based on the false statements of the correction officer, courts have held that prisoners do not have a constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989); *Freeman v. Rideout*, 808 F.2d 949, 951–52 (2d. Cir.1986), *cert. denied*, 485 U.S. 982 (1988) (allegation that false evidence was planted by a prison guard does not state a constitutional claim where procedural process protections are provided); *see also York v. Hernandez*, 2011 WL2650243, at * n. 3 (N.D.Cal.2011) (where plaintiff alleged violation of due process rights by filing false charges against him, court stated, "without more, a prisoner has no constitutionally

---

[3] The court in *Galvez* analyzed former RCW 9.94A.150(1), which is the prior codification of RCW 9.94A.729(1) and does not differ from the current codification in any way relevant to the issue in this case.

REPORT AND RECOMMENDATION - 12

guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); *Tafilele v. Harrington*, 2011 WL 2462750, at *7 (E.D .Cal.2011). Rather, the Fourteenth Amendment provides that a prisoner has a right not to be deprived of a protected liberty interest without due process of law. *Sprouse*, 870 F.2d at 452. Thus, as long as a prisoner receives proper procedural due process, a claim based on the falsity of disciplinary charges, standing alone, does not state a constitutional claim. *Id*.; *see also Freeman*, 808 F.2d at 951; *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir.1984).

Here, while Mr. Garrott alleges that Corrections Officer Foland falsified the evidence against him, the record reflects that Mr. Garrott was given notice of the hearing, was able to provide witnesses and evidence, that a hearing was held, and that presumably the disciplinary hearing officer weighed the credibility of the evidence in determining his guilt. Thus, Mr. Garrott received due process and has no constitutional claim related to the alleged falsification of evidence.

Mr. Garrott fails to show that the state court decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Therefore, he is not entitled to habeas relief as to Claim 2 and it should be dismissed.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

REPORT AND RECOMMENDATION - 13

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Under this standard, this Court concludes that Mr. Garrott is not entitled to a certificate of appealability as he has not shown that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

## CONCLUSION

Based on the foregoing, the Court recommends that Mr. Garrott' habeas petition (ECF No. 6) be **denied and his claims dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 11, 2013**, as noted in the caption.

**DATED** this  16th  day of September, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14